IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 09-119-SLR |
| ) | |
| KEITH SINGLETON, ) | |
| ) | |
| Defendant. ) | |

Katrina Beverly, Philadelphia, Pennsylvania, pro se Petitioner.

Lesley F. Wolf, Assistant United States Attorney, Wilmington, Delaware. Attorney for Plaintiff.

**MEMORANDUM OPINION**

Dated: June 12, 2012
Wilmington, Delaware

[signature] ROBINSON, District Judge

## I. INTRODUCTION

Following a jury trial from August 30 to September 3, 2010, defendant Keith Singleton ("defendant") was found guilty of wire fraud and money laundering in violation of 18 U.S.C. §§ 1349, 1343, and 1957. (D.I. 70) On November 29, 2011, the court issued a final order of forfeiture regarding property owned by defendant. (D.I. 127) Presently before the court is pro se petitioner Katrina Beverly's ("petitioner") emergency motion for return of said property pursuant to Fed. R. Crim. P. 41(g). (D.I. 146) The court has jurisdiction over petitioner's claims pursuant to the doctrine of ancillary jurisdiction which provides the court with jurisdiction over post-conviction motions.[1] For the reasons set forth below, the court denies petitioner's motion.

## II. BACKGROUND

Petitioner and defendant are in a long-term romantic relationship.[2] In June 2002, defendant purchased a home located at 7 Devonshire Drive, Schwenksville,

---

[1] Neither party has challenged the court's jurisdiction; however, ambiguity in the text of the statute ("[t]he motion must be filed in the district where the property was seized") warrants an explanation of the court's jurisdiction. See United States v. Parlavecchio, 57 Fed. Appx. 917, 920 (3d Cir. 2003) ("Implicit in these decisions [i.e. post-conviction motions for the return of property] is our recognition that the District Courts' jurisdiction to entertain [Rule 41(g)] motions is ancillary to the underlying criminal proceedings and that subject matter jurisdiction rests upon the District Courts' supervisory authority over these ancillary proceedings.") (citing United States v. Bein, 214 F.3d 408, 411 (3d Cir. 2000); United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000); United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999); Thompson v. Covington, 47 F.3d 974, 975 (8th Cir. 1995)).

[2] The exact nature of this relationship is unclear and is irrelevant to the present motion, as it has no bearing on petitioner's interest in the property at issue. At some points, petitioner has been described as defendant's fiancée. (D.I. 130 at ¶¶ 5, 13) At other points, petitioner has described herself as defendant's common-law wife. (D.I. 146 at ¶ 4) The mortgage for the property in question, issued in 2002, describes defendant as an unmarried man. (D.I. 149, ex. 5 at 1)

Pennsylvania ("the Property") where he lived with petitioner and their children. (D.I. 146 at ¶ 4) Although petitioner claims an ownership interest in the Property, her name appears on neither the deed nor the mortgage. (D.I. 149, ex. 4, ex. 5) Petitioner claims to have made all mortgage payments from 2003 until February 2012.[3] (D.I. 146 at ¶ 6)

Along with defendant's conviction for fraud and money laundering, the jury returned a special verdict pursuant to Fed. R. Crim. P. 32.2(b)(5) finding defendant's interest in the Property subject to forfeiture.[4] (D.I. 149 at 2; D.I. 72 at 1-2) The court issued a preliminary order of forfeiture on January 18, 2011. (*Id.*) On March 25, 2011, petitioner retained Thomas D. Kenny ("Kenny") "concerning the forfeiture proceedings."[5] (D.I. 146 at ¶ 9) On November 29, 2011, the court issued a final order of forfeiture. (*Id.* at ¶ 10) The final order of forfeiture states that notice had been published on

---

[3] The government contends that the mortgage was in default as of April 15, 2010 as no payments were received after March 2010. (D.I. 149 at 3 n.6) Wells Fargo Bank, N.A. ("Wells Fargo") also states that the mortgage has been in default since April 15, 2010. (D.I. 124 at 8, ¶ 5)

[4] Fed. R. Crim. P. 32.2(b)(5) provides in relevant part: "If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." The forfeiture order pertained only to the real property and not to any personal property within the home as evidenced by instructions to remove personal property found in the notice to vacate and notice of abandoned personal property left at the home. (D.I. 149, ex. 1, ex. 3)

[5] It appears that Kenny was at this time aware that forfeiture would result in eviction of petitioner and her children as he filed a motion on March 25 to vacate the preliminary order of forfeiture specifically so petitioner and her children could continue living at the Property. (D.I. 102 at 4)

2

www.forfeiture.gov for at least thirty days and that the only claim filed on the Property was done so by Wells Fargo.[6] (D.I. 127 at 1)

Following the final order of forfeiture, the government began actions to take physical possession of the Property. On December 14, 2011, Deputy United States Marshal Charles "Chuck" Harvey ("Harvey") posted a notice to vacate on the Property advising the occupants to remove their possessions and vacate the Property within thirty days. (D.I. 149 at 4) On January 5, 2012, Harvey returned to the Property with Supervisory Deputy United States Marshal Patrick D. Ennis ("Ennis") to see if it had been vacated. (*Id.*, ex. 2 at ¶ 3) As the Property appeared occupied, Ennis left his business card and a note regarding the eviction date when no one answered the door. (*Id.*)

On January 6, Kenny contacted Ennis who advised him that the United States Marshals Service ("USMS") would take possession of the Property thirty days after posting the notice to vacate. (*Id.*) Kenny contacted Ennis again to find out the date that the government would take possession of the Property. (*Id.*) Ennis informed him that an exact date had not been set, but assured him that it would not be during the week of January 16. (*Id.*) Kenny contacted Ennis a third time, at some point after January 20, and Ennis told him that the government was going to seize the Property on January 27, 2012 at 9:00 a.m. (*Id.*, ex. 2 at ¶ 4)

---

[6]Notice was posted on www.forfeiture.gov from February 9, 2011 until March 10, 2011. (D.I. 96 at 3)

3

On January 27, 2012, the USMS seized the Property.[7] (*Id.*, ex. 2 at ¶ 5) Although no one was in the home at the time, the inhabitants had not removed their possessions. (*Id.*) The USMS secured the Property and posted a notice on the front door with instructions on how the occupants could retrieve their belongings. (*Id.*) On March 19, Ennis was advised by the property management company hired to take care of the Property that Kenny had contacted the property management company and made arrangements for the occupants to retrieve their belongings on March 29 and 30.[8] (*Id.*, ex. 2 at ¶ 6)

Petitioner moves to have the Property returned to her because she has an interest in it that is superior to defendant's. (D.I. 146 at 1) Petitioner appears to claim an interest in the Property derived from paying the mortgage on the Property (along with other bills). (*Id.* at i-ii at ¶¶ 4, 6, 7) Petitioner states that the Property should be returned to her because she was given no notice of the forfeiture proceedings and that, even if she had notice, she did not realize that the proceedings could affect her interest in the Property.[9] (*Id.* at ii at ¶¶ 9-12)

---

[7]Petitioner states that she was evicted on February 2, 2012. (D.I. 146 at ¶ 12) Although the actual date appears irrelevant, this opinion will use the January 27 date supplied by the government as the notice of abandoned personal property shows the first digit of the date of posting as "1." (D.I. 149, ex. 3)

[8]Petitioner has been given permission to retrieve her belongings. (D.I. 148 at 1)

[9]Petitioner's claim that she knew nothing of any forfeiture proceedings is disingenuous at best given that in her own motion she stated that she retained Kenny on March 25, 2011 specifically to help with the forfeiture proceedings. (D.I. 146 at ¶ 9) Additionally, in a motion to stay proceedings and/or executions upon judgement, also to challenge forfeiture of the Property, filed by defendant (through Kenny) on January 25, two days prior to the date that petitioner was evicted, defendant stated that "[i]n or around December 18, 2011, [d]efendant's fiancée and two children received a 'Notice

4

## III. STANDARD OF REVIEW

A person whose property has been seized by the government may petition for its return. "Generally, a Rule [41(g)] motion is properly denied 'if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.'" *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) (quoting *United States v. Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991)). When, however, "the motion is filed by a party against whom no criminal charges have been brought, such motion is in fact a petition that the district court invoke its civil equitable jurisdiction." *Gmach Shefa Chaim v. United States*, 692 F. Supp. 2d 461, 468-69 (D.N.J. 2010) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1001 (9th Cir. 2009)).

When determining whether to exercise equitable jurisdiction over such motions, courts, including district courts in the Third Circuit, generally look to four factors. *Gmach Shefa Chaim*, 692 F. Supp. 2d at 469 (citing *Manno v. Christie*, No. 08-3254, 2008 WL 4058016, at *2 (D.N.J. Aug. 22, 2008)). First, "whether the government displayed a callous disregard for the constitutional rights of the movant." *Id.* Second, "whether the movant has an individual interest in and need for the property [s]he wants returned." *Id.* Third, "whether the movant would be irreparably injured by denying return of the property." *Id.* Fourth, "whether the movant has an adequate remedy at law for the redress of [her] grievance." *Id.* In applying the four factors, the last two,

---

to Vacate' . . . from the [USMS], wherein it was indicated, inter alia, that the [USMS] . . . will arrange to change locks and take full possession of the property, and that [d]efendant's fiancée and two children will be required to vacate the premises within thirty days." (D.I. 130 at ¶ 5)

5

whether movant would be irreparably harmed by denying the return of property and whether movant has an adequate remedy at law, have been identified as paramount. *Id.* Even so, "the decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint. Such jurisdiction, therefore, is only appropriate in exceptional cases where equity demands intervention." *Id.* (quoting *United States v. Dean*, 80 F.3d 1535, 1542 (11th Cir. 1996)).

## IV. DISCUSSION

### A. Callous Disregard

The government did not display callous disregard for petitioner's constitutional rights. By following Fed. R. Crim. P. 32.2, the government ensured that subjecting the Property to forfeiture was proper. By publishing notice of the forfeiture on www.forfeiture.gov for at least thirty days, the court gave interested parties sufficient time to claim an interest in the Property. Finally, by giving more than the thirty days stated in the notice to vacate and providing information to Kenny, the USMS gave petitioner ample time to remove herself and her belongings from the Property prior to her eviction.

Rule 32.2 requires a jury to determine whether property is subject to forfeiture by way of a special verdict. In this case, the jury found by a preponderance of the evidence that the Property was subject to forfeiture. (D.I. 72 at 1-2) Based on all the evidence presented at trial, the jury determined that the proceeds of defendant's criminal actions were used to pay the mortgage on the Property. By submitting the forfeiture of the Property specifically to the jury, the government ensured that

defendant's constitutional rights were not violated and that his interest in the Property was properly subject to forfeiture. Although the safeguards of Rule 32.2 protect the defendant and do not apply directly to petitioner, the fact that a jury determined that the Property was subject to forfeiture shows that the forfeiture was warranted by the facts and was not an arbitrary action.

Moreover, by giving interested parties sufficient time to assert their interests in the Property, the court did not show callous disregard for petitioner's constitutional rights. The preliminary order of forfeiture, issued January 18, 2011, provided instructions for interested parties to assert their interest in the Property before the court issued its final order of forfeiture. Specifically, the preliminary order of forfeiture stated:

> Any person, other than the above named defendant, asserting a legal interest in the Subject Property may, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of his alleged interest in the Subject Property, and for an amendment of the order of forfeiture, pursuant to 21 U.S.C. § 853(n).

(D.I. 87 at ¶ 7) Notice of the forfeiture was posted on www.forfeiture.gov for at least thirty days.[10] (D.I. 96 at 3) Since the final publication occurred on March 10, 2012, petitioner would have had until April 9, 2012 to file a petition under § 853(n). Given that petitioner retained Kenny to assist her with the forfeiture proceedings on March 25, 2011, it appears she had ample time and notice to assert her interest in the Property within the time provided by statute. Although petitioner did not need to retain an

---

[10]Petitioner claims to be the spouse of defendant and was living in a home that he owned and that the jury found subject to forfeiture. Thus, petitioner should have been aware of the preliminary order of forfeiture as she was presumably following the proceedings.

7

attorney at this point, the fact that she did shows that she had actual notice that the government was taking action to posses the Property prior to the April 9 deadline to file a § 853(n) petition.

Finally, by giving petitioner more time than was required under its own notice to vacate, the USMS did not show callous disregard for petitioner's constitutional rights. The USMS posted notice of the impending eviction on December 14, 2011 and again on January 5, 2012. The notices informed petitioner that she would be evicted in thirty days and advised her to remove her belongings. The USMS then spoke with petitioner's counsel, Kenny, several times about the impending eviction, even going so far as to tell him of the exact date and time. Further, the USMS did not take possession of the Property within thirty days of the first notice; they gave petitioner nearly two additional weeks to remove herself, her children, and their belongings from the Property and find a new place to live. By giving petitioner extra time and communicating several times with her attorney, the USMS showed the utmost respect for petitioner's constitutional rights.

### B. Individual Interest and Need for the Property

Petitioner's name does not appear on the deed or the mortgage to the Property. The deed to the Property grants an interest in fee simple to Keith M. Singleton. (D.I. 149, ex. 4) Petitioner's name is nowhere on the instrument. Likewise, the mortgage lists "Keith M. Singleton, an unmarried man," as the borrower. (D.I. 149, ex. 5 at 1) Again, petitioner's name is nowhere on the instrument and, apparently, the mortgage company did not recognize her as defendant's spouse. Given that petitioner's name is not included on any of the documents generally used to show ownership of property,

8

there is no reason for the court to find that petitioner has a legally cognizable interest in the Property.

Petitioner did not take advantage of the procedure available to her to assert her interest in the Property following the preliminary order of forfeiture. As stated in the preliminary order of forfeiture, third parties may assert a legal interest in property that has been ordered forfeited within thirty days of the final publication of a notice of forfeiture under 21 U.S.C. § 853(n). This procedure allows the third party to explain in a petition the facts and circumstances surrounding her alleged interest and provides for a hearing in which the third party may testify, present witnesses and evidence, and cross-examine opposing witnesses. 21 U.S.C. § 853(n)(2)-(5). Although filing an 853(n) petition does not show that a property interest exists, the fact that the petitioner did not take advantage of that opportunity to assert an interest is evidence that she does not have a property interest.[11]

### C.   Irreparable Injury by Denying Return of the Property

The denial of petitioner's motion does not cause irreparable injury given that petitioner has no interest in the Property. No injustice is done by refusing to give to petitioner something that is not hers in the first instance.

### D.   Adequate Remedy at Law

Rule 41(g) is inappropriate here as petitioner had an adequate remedy at law. As discussed above, the proper avenue for petitioner to have taken to recover the Property was 21 U.S.C. § 853(n). At this point, because she failed to act under §

---

[11]Furthermore, the time to assert a property interest under § 853 has now passed.

9

853(n) and forfeiture was made final, the correct way for petitioner to proceed would be to file a motion for relief from judgment under Fed. R. Civ. P. 60(b). In *United States v. Neidig*, 253 Fed. Appx. 239 (3d Cir. 2007), the Third Circuit stated that the proper way for courts to deal with untimely petitions that should have been filed pursuant to § 853(n) is to treat them as Rule 60(b) motions. *Id.* at 240. *See also United States v. Rodriguez-Aguirre*, 414 F.3d 1177, 1182 (10th Cir. 2005) ("A [Rule 41(g)] motion is an inappropriate vehicle for challenging a judicial forfeiture; the proper vehicle is a motion for relief of judgment under Rule 60(b)"); *United States v. Houshar*, Crim. No. 01-272-02, 2006 WL 562206, at *9 (E.D.Pa. Mar. 7, 2006).

Petitioner did not file an untimely § 853(n) petition. The caption of the petition reads "Emergency Motion for Return of Property Brought by an Innocent Third-Party Pursuant to Rule 41(g) Fed.R.Crim.P.[sic]" so it appears that petitioner did intend to file a motion for return of property under 41(g). (D.I. 146 at 1) Since petitioner did not file an untimely 853(n) petition, there is no reason to construe her motion as a Rule 60(b) motion for relief.

Even if the court were to construe petitioner's motion as a Rule 60(b) motion for relief, the motion would still be denied. Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;

> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Rule 60(b) motions require the court to exercise sound discretion in light of all relevant circumstances. *United States v. Nolasco*, No. 04-617, 2008 U.S. Dist. LEXIS 74964, at *7 (D.N.J. Sep. 25, 2008). Further, "[t]he remedy provided by Rule 60(b) is extraordinary and [only] special considerations may justify granting relief under it." *Id.* at *8 (quoting *Moolenaar v. Gov't of the Virgin Is.*, 822 F.2d 1342, 1346 (3d Cir. 1987)). Petitioner does not allege, or present evidence to suggest, that Rules 60(b)(1)-(5) are applicable to the present motion. Further, for all of the reasons previously discussed relating to Rule 41(b), the totality of the circumstances in the present case does not justify granting relief under Rule 60(b)(6).

## V. CONCLUSION

For the foregoing reasons, the court shall decline to exercise equitable jurisdiction over plaintiff's motion. The motion, therefore, is denied.