## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

KEITH SINGLETON,

Movant/Defendant,

v.

UNITED STATES OF AMERICA,

Respondent/Plaintiff.

)
)
) Crim. No. 09-119-SLR
) Civ. No. 12-1019-SLR
)
)
)
)

## MEMORANDUM OPINION

Keith Singleton. Pro se movant.

Lesley F. Wolf. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Counsel for respondent.

September  29 , 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Keith Singleton ("movant") is a federal inmate currently confined at FCI Beckley in Beaver, West Virginia. Movant timely filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 155) The government filed an answer in opposition, and movant filed a reply. (D.I. 172; D.I. 179) For the reasons discussed, the court will deny movant's § 2255 motion without holding an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2009, movant and a co-conspirator, Eugene Watson, were indicted and charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (count one). (D.I. 172 at 2) Movant was also charged with sixteen counts of wire fraud, in violation of 18 U.S.C. § 1343 (counts eighteen to thirty-three), and two counts of money laundering, in violation of 18 U.S.C. § 1957 (counts thirty-four and thirty-five). The charges stemmed from allegations that from December 2006 through 2008, movant and Watson, along with Carin Seals, an employee of the financial institution Citigroup, defrauded Citigroup out of millions of dollars. The fraud was alleged to have occurred when Seals sent or attempted to send numerous fraudulent wire transfers from internal Citigroup accounts to financial accounts controlled by movant, Watson, and their associates. *Id.*

On August 18, 2010, the government filed a pre-trial motion in limine to admit 404(b) evidence ("motion in limine"). (D.I. 44) The motion in limine sought to admit, inter alia, the testimony of Robert Morgan, a government trial witness and one of

movant's co-conspirators in the Citigroup wire fraud scheme. (D.I. 44 at 2-3) In the motion, the government explained that Morgan was expected to testify at trial as to how he assisted movant in perpetrating the Citigroup wire fraud. Morgan was also expected to testify that, in February 2009, approximately two years after his involvement in the Citigroup fraud, movant again approached him and told Morgan that he was involved with an individual known as "Big Homey," who had arranged for a large sum of money to be unlawfully transferred to a particular bank account (the "Big Homey Scheme"). Morgan believed that movant had asked for his assistance in obtaining the proceeds of this unlawful wire transfer just as movant had previously recruited Morgan to participate in the unlawful Citigroup wire transfer scheme two years prior. The government argued that the Big Homey evidence should be permitted under Rule 404(b) because it demonstrated that movant knowingly received stolen funds as part of the Citigroup fraud and that his actions were not an accident or a mistake. The government asserted that this evidence was not being introduced to demonstrate that movant has a propensity to commit fraud crimes. (D.I. 44 at 2-9) On August 26, 2010, the court granted the government's motion in limine in part, permitting the government to introduce the evidence relating to the Big Homey Scheme. (D.I. 57)

A five-day jury trial was held from August 30, 2010 through September 3, 2010. The government presented evidence showing that Seals sent unlawful wire transfers from December 2005 through March 2007 totaling more than $2,700,000 from Citigroup to movant and Watson in exchange for kickbacks from movant. (D.I. 172 at 3) Morgan testified as a government witness about the Big Homey Scheme. In its case-in-chief, the government also put forward the testimony of six other witnesses and introduced

2

over 100 exhibits in order to prove that movant was guilty of the offenses charged against him. (D.I. 172 at 3-4) One of the exhibits was the transcript of movant's 2008 civil deposition which involved the same events at issue in the Citigroup fraud. (D.I. 111 at 28-30)

During the trial, movant attempted to rebut the government's case by arguing that Seals led him to believe that he was receiving a legitimate loan from Citigroup. (D.I. 172 at 4) Movant took the stand on his own behalf and testified that Seals, whom he did not know at the time, visited his pizza restaurant in December 2006, presenting herself as a Citigroup loan officer who could provide him with a commercial loan. Movant also testified that Seals never told him that the money she wired into his accounts was stolen. *Id.*

On cross-examination, movant was asked about the answers he gave during the 2008 civil deposition involving the same events at issue in the Citigroup fraud. (D.I. 172 at 4) Movant acknowledged that, during the deposition: (1) he had been unable to recall writing large checks drawn on the fraud proceeds, including one check for $1 million; (2) he had denied knowing that someone from Citigroup sent wire transfers to his own bank accounts when, in fact, he actually did know that the wire transfers had come from Citigroup; and (3) he had falsely denied knowing Seals or anyone else employed at Citigroup. Movant explained that he "lied" in his deposition because he was nervous. *Id.*

The court provided a limiting instruction as a part of its final charge to the jury and instructed the jury that the evidence related to the Big Homey Scheme was admitted only for certain limited purposes, including to prove that movant acted with the

3

requisite state of mind, knowledge, or intent necessary to commit the crimes charged or that his actions were not a mistake or an accident. (D.I. 66 at 22) The court emphasized that movant was "not on trial for committing this other act." *Id.* The court further instructed the jury not to consider the testimony regarding the Big Homey Scheme as evidence proving that movant is a bad person or predisposed to do bad things, such as participate in the crimes charged. *Id.*

On September 3, 2010, the jury found movant and Watson guilty on all counts. (D.I. 69) The presentence investigation report found that movant's total offense level was 34 and that his criminal history category was II, yielding a sentencing guidelines range of 168 to 210 months of incarceration. (D.I. 122 at 4-5) Sentencing counsel for movant filed a sentencing letter and memoranda requesting a significant variance; sentencing counsel also objected to a two level upward adjustment to movant's offense level computation, arguing that movant was not the organizer or the leader of the conspiracy to defraud Citigroup. (D.I. 98; D.I. 99)

On March 22, 2011, the court sentenced movant to 96 months of imprisonment and five years of supervised release on counts one and counts eighteen through thirty and thirty-three, and to 96 months of imprisonment and three years of supervised release on counts thirty-four and thirty-five, with all of the respective terms of imprisonment and supervised release to run concurrently. (D.I. 105) The court also ordered movant to pay restitution in the amount of $85,366 on counts thirty-four and thirty-five, and $2,866,545.36 on the remaining counts, plus a special assessment of $1,700. *Id.*

4

Movant appealed his conviction, and the Third Circuit Court of Appeals affirmed the court's judgment on January 20, 2012. *See United States v. Singleton*, 458 F. App'x 169, 174 (3d Cir. 2012).

## III. DISCUSSION

Movant timely filed the instant pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, asserting the following five ineffective assistance of counsel claims: (1) trial counsel compelled movant to testify at trial against his wishes and also failed to advise movant that any false testimony could result in a sentencing enhancement; (2) trial counsel failed to object and move for a mistrial when the court admitted evidence that was "unfairly prejudicial" and made it more likely that a jury would find him guilty of the charged crimes; (3) trial counsel failed to object and request a limiting jury instruction either during or at the conclusion of Morgan's testimony; (4) trial counsel and sentencing counsel failed to challenge the validity of the money laundering charges in light of *United States v. Santos*, 553 U.S. 507 (2008); and (5) trial counsel and sentencing counsel failed to notice and object to the "erroneous application" of criminal history category II to configure movant's sentence and argue that the appropriate criminal history was category I. (D.I. 155 at 13-17)

Movant has properly raised his ineffective assistance of counsel allegations in the instant § 2255 motion rather than on direct appeal,[1] and the court must review these arguments pursuant to the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, movant must demonstrate that

---

[1]*See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996).

"counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000). Additionally, in order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. When a movant's guilt was established by overwhelming evidence, the movant usually cannot show that he was prejudiced by counsel's mistakes unless he can provide "a considerable amount of new strong evidence to undermine his conviction." *Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010); *see Strickland*, 466 U.S. at 695-96. Finally, there is no need to address both *Strickland* prongs if the movant is not able to meet his burden of proof on the other. *See Strickland*, 466 U.S. at 697; *McAleese v. Mazurkiewicz*, 1 F.3d 159, 170 (3d Cir. 1993). "If it easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, [] that course should be followed." *Strickland*, 466 U.S. at 697.

6

## A. Claim One: Trial Counsel Forced Movant to Testify at Trial and Failed to Properly Advise Movant About Right to Testify

In claim one, movant contends that trial counsel compelled him to testify against his wishes, without proper preparation, without advising movant that testifying was movant's decision, and without advising movant that any testimony "viewed as false could result in a sentencing enhancement." (D.I. 155 at 22) According to movant, if trial counsel had properly informed him that he did not have to testify, he would have maintained his Fifth Amendment right against self-incrimination and would not have been found guilty.

A defendant has a constitutional right to testify on his behalf at trial. *See Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987). A claim alleging that defense counsel forced the defendant to testify is analyzed under the two-pronged *Strickland* standard. *See Palmer v. Hendricks,* 592 F.3d 386, 398-99 (3d Cir. 2010); *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998). "[A]s a matter of strategy and common sense, the defendant and counsel may wait until well into the trial before deciding whether the defendant will testify." *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995). Defense counsel's strong advice to a defendant to testify does not amount to forcing him to testify. *See Carter v. Lee*, 283 F.3d 240, 252 n.11 (4th Cir. 2002); *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992)("if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.")

Movant has filed two documents to support his contention that trial counsel forced him to testify. One document is a "statement" allegedly provided by movant's

7

appellate counsel, wherein appellate counsel asserts that he spoke with movant's trial counsel, and that movant's trial counsel admitted he "overrode" movant's expressed desire not to testify. (D.I. 179 at 8) The statement allegedly penned by appellate counsel also asserts that trial counsel told appellate counsel he did not advise movant "as to the possible consequences under the sentencing guidelines with respect to perjury should he be convicted," and that trial counsel also "admitted that, although he prepared [movant] for testifying, he did not go over [movant's] civil deposition before the client took the stand." *Id.*

The second document provided by movant is a notarized affidavit from co-defendant Watson, wherein Watson asserts that he and his own defense counsel were present when movant and his trial counsel were discussing whether movant should take the stand to testify, and: (1) movant informed his trial counsel he did not want to testify; (2) Watson's defense counsel interfered in the conversation and told movant that, in her opinion, he should take the stand; (3) movant's trial counsel instructed movant that he should testify; (4) it appeared to Watson that the decision whether or not to take the stand was made by movant's trial counsel and not movant; (5) movant merely went along with trial counsel's advice; and (6) to the best of Watson's knowledge, movant's trial counsel did not prepare him for cross-examination. (D.I. 179 at 9-10)

Neither of these documents demonstrates that movant's trial counsel forced movant to testify at trial. As an initial matter, since the "statement" allegedly provided by movant's appellate counsel has not been notarized, the court cannot verify that the "statement" was actually penned by appellate counsel. Considering that movant filed an objection to the government's request to have trial counsel respond to movant's

8

ineffective assistance of counsel allegations and to provide any relevant documentation (D.I. 171), the court is not persuaded that movant subsequently approached appellate counsel for his third-hand version of trial counsel's actions. Nevertheless, even if appellate counsel's statement is legitimate, it does not assert that trial counsel never informed movant he could opt to not testify, and it does not include any explanation as to how trial counsel allegedly "overrode" movant's initial decision not to testify. Rather, appellate counsel's statement that trial counsel allegedly explained to him that "he [trial counsel] felt [movant] needed to testify at trial because the defense was that the money that came to [movant] was a loan but there were no documents to support that position" (D.I. 179 at 8) actually demonstrates that trial counsel did not "force" movant to testify but, rather, provided movant with a rational reason for testifying.[2] This conclusion is further supported by the affidavit filed by Watson's defense counsel, wherein Watson's defense counsel states that she heard movant's trial counsel "advise[] [movant] that based on the evidence against him, he needed to explain his side of the story to the jury." (D.I. 172 at 24-25) In short, appellate counsel's use of the term "overrode" fails to convince the court that trial counsel did anything more than "strongly advise" movant that it was in his best interest to testify. *See Daija v. United States,* 2010 WL 2605736 at *6 (S.D.N.Y. June 29, 2010)("it is proper for defense counsel to give his views and advice as to the advisability of testifying at trial," which may include "strong advi[c]e [as to] the course that counsel thinks best.").

---

[2]In fact, in his reply to the government's answer, movant himself describes appellate counsel's statement as "soundly suggesting" that trial counsel forced him to testify rather than as affirmatively demonstrating that trial counsel forced him to testify. (D.I. 179 at 3)

9

As for Watson's notarized affidavit, the court does not view Watson's assertion that "it appeared to [him] that the decision whether or not to take the stand was made by [movant's trial counsel] and not by movant" as supporting movant's allegation of coercion, because the assertion merely expresses Watson's opinion about what he thinks occurred. Indeed, the fact that Watson's former defense counsel filed a more credible affidavit directly contradicting Watson's allegation that she interfered with movant's conversation with his trial counsel leads the court to question the credibility of all of the other assertions in Watson's affidavit, including Watson's assertion that trial counsel made the decision that movant should testify.[3]

When these documents are viewed in conjunction with movant's failure to provide any other evidence to support his allegation of coercion, the court cannot find that trial counsel forced movant to testify. Therefore, the following two issues in claim one remain: (1) did trial counsel advise movant that he could refrain from testifying; and (2) did trial counsel's advice that movant should testify constitute ineffective assistance under *Strickland.*

---

[3]In her affidavit, Watson's former defense counsel states that she recalled

having joint defense meetings with my client, Mr. Watson, and [movant and his trial counsel] at various times throughout the trial. Some of these meetings occurred in the hallway adjacent to the courtroom during the course of the trial. On the day that [movant] testified at trial, [movant's trial counsel] and I were meeting jointly with our clients []. [Movant's trial counsel] advised [movant] that, based on the evidence against him, he needed to explain his side of the story to the jury. I did not interfere with [movant's trial counsel's] advice to movant.

(D.I. 172 at 24-25)

10

A defense attorney's failure to inform a defendant that the defendant, not the attorney, is the person who must decide whether to testify is sufficient to satisfy the performance prong of *Strickland. See Brown v. Artuz*, 124 F.3d 73, 80 (2nd Cir. 1997). However, courts are entitled to presume that this type of misconduct on the part of defense counsel is rare. *Id.* In this case, movant has not provided any support for his conclusory allegation that trial counsel failed to advise him of his right to refrain from testifying. Notably, none of the "affidavits" or "statements" provided by movant actually assert that trial counsel failed to generally advise movant of his right to testify or that movant must make the ultimate decision. (D.I. 179 at 8-11) Therefore, the court cannot conclude that trial counsel failed to advise movant that he could refrain from testifying.[4]

The next issue is whether trial counsel's advice that movant should testify amounted to ineffective assistance. As noted by the United States Supreme Court in *Rock v. Arkansas*, "the most important witness for the defense in many criminal cases is the defendant himself,"[5] because the "most persuasive counsel may not be able to speak for a defendant as the defendant himself might, with halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304 (1961). When, as here, "the very point of trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance." *United States v. Walker*, 772 F.2d 1172, 1179 (5th Cir. 1985).

---

[4]Nevertheless, even if the court were to presume that movant was not adequately advised about his right to refrain from testifying, the court concludes that movant is not entitled to relief because he cannot satisfy the prejudice prong of the *Strickland* test. *See infra* at 11-13.

[5]*Rock*, 483 U.S. at 52.

11

In this case, the government presented overwhelming evidence of movant's guilt through the testimony of multiple witnesses and exhibits. Movant's testimony was extremely important, because the only question was whether movant knowingly intended to engage in the wire fraud, and not whether money was illegally transferred to movant's accounts. In fact, movant's testimony was the only evidence offered to establish that he did not knowingly participate in the money wiring schemes but, rather, that he believed he received the money as the result of a legitimate loan.

Moreover, movant's testimony did not open the door to the government's introduction of his prior deposition testimony, because the government's use of that prior deposition testimony under Federal Rule of Evidence 801 was not dependent on movant taking the stand (D.I. 111 at 28-29), and the government had already admitted portions of that testimony during the course of it case-in-chief. (D.I. 111 at 31-34) The government raised the issue of movant's 2008 deposition testimony on cross-examination, and the thorough questions trial counsel posed to movant about that 2008 deposition on re-direct provided movant with an opportunity to provide additional explanations for his 2008 deposition statements. (D.I. 112 at 248-262) In sum, movant has not demonstrated a reasonable probability that, but for counsel's advice to testify, "the jury would have rejected the substantial evidence against him and acquitted him based upon the absence of his testimony." *Cleckler v. United States*, 2009 WL 1507538, at *10 (M.D. Ala. May 29, 2009).

Finally, trial counsel's alleged failure to advise movant that his testimony might result in an obstruction of justice enhancement also does not does not amount to ineffective assistance. Movant's adjusted offense level for count one and counts

12

eighteen to thirty-three would have been 31 without the obstruction of justice enhancement, but was calculated to be 33 with that enhancement. (D.I. 122 at 4-5) However, because movant's adjusted offense level for counts thirty-four and thirty-five was 34, movant's total offense level came out to be 34. (D.I. 122 at 4-5) In other words, movant's total offense level would have been 34 even if he had not been subject to the two-level enhancement for obstruction of justice on counts one and counts eighteen to thirty-three. Additionally, movant ignores the fact that the total 96 month sentence the court imposed represented a significant variance from the advisory guidelines range of 168 to 210 months of imprisonment. Given all of these circumstances, movant has not demonstrated a reasonable probability that he would have received a different sentence but for counsel's alleged failure to inform him of the possibility of an obstruction of justice enhancement.

Having determined that movant was not coerced into testifying and that he was not prejudiced by trial counsel's advice to testify, the court concludes that movant has failed to demonstrate that trial counsel's advice regarding his right to testify amounted to constitutionally ineffective assistance. Accordingly, the court will deny claim one as meritless.

## B. Claim Two: Trial Counsel Did Not Object to Unfairly Prejudicial Evidence and Move For Mistrial

In claim two, movant contends that trial counsel failed to object and move for a mistrial when the court admitted evidence that was "unfairly prejudicial" and made it more likely that a jury would find him guilty of the charged crimes. Although the government asserts that claim two should be summarily dismissed for failure to specify

13

which evidence was unfairly prejudicial, the context in which claim two is asserted indicates that movant is arguing that counsel should have objected to Morgan's testimony regarding the Big Homey Scheme. Therefore, the court will not summarily dismiss the claim as conclusory.

However, the court's liberal reading of claim two does not aid movant in his pursuit of relief. Prior to trial, the government filed a motion in limine to admit Morgan's testimony regarding the Big Homey Scheme, for the purpose of demonstrating movant's intent to defraud, his knowledge that funds were being laundered through third party bank accounts, and the absence of mistake on movant's part when he arranged to receive the charged funds from Seals and route them through Morgan's bank account. Movant's trial counsel opposed the motion in limine and moved for an order denying the admission of the evidence. After hearing oral argument, the court held that the government could introduce evidence relating to the Big Homey Scheme and partially granted the government's motion in limine. Considering that the court permitted the introduction of the Big Homey Scheme, and that the Third Circuit affirmed that decision on direct appeal, movant cannot demonstrate a reasonable probability that the court would have sustained another objection to this evidence during or after Morgan's testimony. Moreover, trial counsel actually did re-raise his objection to Morgan's testimony regarding the Big Homey Scheme during a recess outside the jury's presence. (D.I. 110 at 138-140) Specifically, trial counsel stated, "I'm asking you to go back over the testimony of Mr. Morgan and strike the comment and tell the jury that they're not to --- they shouldn't consider the conversation about Mr., [sic], or the Big Homey conversation, because there was no basis for it. There was no basis. And,

14

again, I objected to it before it happened and you overruled my objection, but there was

no basis because it was unsupported." (D.I. 110 at 139-140)  The court responded that

it was not going to "strike anything" already allowed. (D.I. 110 at 140)

For all of these reasons, the court concludes that movant has failed to satisfy

either prong of the Strickland standard.  Therefore, the court will deny claim two as

meritless.

### C. Claim Three:  Trial Counsel Did Not Request A Limiting Jury Instruction For Morgan's Testimony

The court gave the following limiting instruction at the close of the evidence:

> You have heard testimony concerning comments made by [movant] to Robert Morgan in 2009 relating to $800,000 in a bank account.  [Movant] is not on trial for committing this other act and you many not consider the evidence of this other act as a substitute for proof that [movant] committed the crimes charged.

> Instead, this evidence of another act was admitted only for limited purposes.  You may consider this evidence only for the purpose of deciding whether [movant] had the state of mind, knowledge, or intent necessary to commit the crimes charged in the indictment, acted with a method of operation as evidenced by a unique pattern, or did not commit the acts for which he is on trial by accident or mistake.  You may consider this evidence only for these purposes, and you may not consider this evidence to prove that [movant] is a bad person or predisposed to do bad things, such as participate in the charged crimes.  Do not consider this evidence for any other purpose.

(D.I. 66 at 22)

In claim three, movant asserts that trial counsel provided ineffective assistance

because he did not request a limiting instruction to be given contemporaneously with or

at the conclusion of Morgan's testimony, and he contends that the limiting instruction

given at the close of the evidence was provided too late to remedy the prejudicial effect

of Morgan's testimony.

This argument is unavailing. As noted by the Third Circuit in movant's direct appeal, "there is no rigid rule regarding the timing of such instructions." *Singleton*, 458 F. App'x at 173. Moreover, there is a long-standing presumption that juries follow the instructions provided by courts. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000); *United States v. Hakim*, 344 F.3d 324, 330 (3d Cir. 2003). The limiting instruction provided by the court sufficed to cure any possibility of prejudice, and movant has not demonstrated how giving the limiting instruction contemporaneously with Morgan's testimony would have altered his trial's outcome. Therefore, the court will deny claim three, because movant has failed to establish that he was prejudiced by counsel's decision not to request the instruction.

## D. Claim Four: Counsel Failed to Challenge Money Laundering Charges Pursuant to *United States v. Santos*

In *Santos*, the Supreme Court plurality opinion held that the term "proceeds," as used in the money laundering statute (18 U.S.C. § 1956), must in some cases be limited to "profits" rather than gross receipts of certain specified unlawful activity in order to avoid a merger problem wherein the same conduct will simultaneously violate two statutes. The *Santos* Court found that, when a defendant is convicted of illegal gambling activity and is also charged with money laundering for the transactions in which he paid his employees and bettors, those transactions were just paying the "essential expenses of operating" the underlying crime and, therefore, did not constitute money laundering. *See Santos,* 553 U.S. at 524. If the money laundering statute covered paying the essential expenses of the underlying crime, then the money laundering charge would "merge" with the proceeds-generating crime (and produce a higher penalty), which

16

would mean that a separate conviction for money laundering would be tantamount to a second conviction for the same offense. *Id.* at 514-19, 525-27. With respect to *Santos'* crimes of conviction, the lottery statute provided for a maximum five-year sentence and the money laundering statute provided for a maximum sentence of twenty years. After finding no evidence that the transactions upon which Santos' money laundering convictions were based involved profits from the lottery operation, the *Santos* Court affirmed the Court of Appeals' decision vacating those money laundering convictions.

In claim four, movant contends that all of the attorneys who represented him were ineffective for failing to challenge the money laundering charges (counts thirty-four and thirty-five) against him in light of the Supreme Court's holding in *Santos.* According to movant,

[t]he nature of the bank frauds, as alleged in the indictment and as characterized by the government throughout this case, indicates the existence of the merger problem discussed by *Santos.* Each relevant wire fraud and bank fraud explicitly alleged that the defendants engaged in this fraud to enrich themselves.

(D.I. 155 at 25-6) In essence, movant asserts that *Santos* effectively rendered his conduct "non-criminal" because it modified the meaning of the word "proceeds" as used in the money laundering statute to mean "profits" instead of "net receipts."

To begin, the court notes that, "when no single rationale explaining the result enjoys the assent of five Justices, as was the case in *Santos*, the holding of the case is limited to the narrowest ground supporting the result." *Rashid v. Warden Philadelphia, FDC*, 2015 WL 3622299, at \*3 (3d Cir. June 11, 2015). Presuming, without deciding,

17

that *Santos* applies to movant's money laundering conviction under 18 U.S.C. § 1957,[6]

the court concludes that counsel did not provide ineffective assistance by failing to raise

a *Santos* challenge, because there is no merger problem in movant's case that amounts

to punishing him twice for the same conduct. Here, each wire fraud offense (counts one

and counts eighteen to thirty-three) was complete when a co-conspirator caused a

Citigroup central bank account to transfer funds to bank accounts in movant's name or

under his control. *See United States v. Rashid*, 39 F. Supp. 3d 649, 654 (E.D. Pa.

2014)(""Mail and wire fraud are completed crimes when the mail or wire communication

is sent, [] [and the] essential expenses of mail and wire fraud are costs incurred in

sending mail or interstate wire communications, not, as defendant argues, the expenses

of maintaining the scheme or artifice to defraud.") Here, the § 1957 money laundering

offenses (counts thirty-four and thirty-five) charged that the subsequent transfers of

those fraudulent proceeds, or "criminally derived property," were withdrawals by checks

drawn on movant's bank accounts.[7] *See Moro*, 505 F. App'x at 116 (finding no merger

---

[6]*See United States v. Moro*, 505 F. App'x 113, 116 (3d Cir. 2012)(applying *Santos* to appellant's argument that his convictions under 18 U.S.C. § 1957(f)(2) must be reversed because the government failed to prove that the challenged transactions involved net profits); *United States v. Nagle*, 2013 WL 3894841, at *74 (M.D. Pa. July 26, 2013)("Although the defendant in *Santos* was convicted, inter alia, of operating an illegal lottery and Section 1956 money laundering, the Supreme Court's concern for unconstitutional "merger" also applies to Section 1957.")

[7]More specifically, count thirty-four provided:

On or about March 31, 2007, in the District of Delaware and elsewhere, [movant] did knowingly engage in a monetary transaction by and through a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, that is the withdrawal by check of $70,000.00 from a Citizen's Bank account [], such property having been derived from a specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud, in violation of 18, United States

18

where substantive fraud offenses were completed when victim sent money to vendor and § 1957 convictions related to subsequent transfers of those proceeds); Rashid, 39 F. Supp. 3d at 654 ("By paying the expenses of his artifice or scheme to defraud, through payment of salaries and rent, [defendant] laundered profits from the completed mail and wire fraud to facilitate future crimes.") As a result, there is no merger problem because the subsequent transfers were not essential elements of the completed wire fraud offenses, and there was sufficient evidence for the jury to conclude that the transfers charged in the indictment involved proceeds of the wire fraud offenses. See Abuhouran v. Grondolosky, 643 F. Supp. 2d 654, 669 (D.N.J. 2009)("Whatever was done with the proceeds of each loan was the start of a new activity, a separate crime if done with the requisite intent."), aff'd 392 F. App'x 78 (3d Cir. 2010). Thus, the court will deny claim four, because an attorney's failure to raise a meritless argument does not amount to constitutionally ineffective assistance.

---

Code, Sections 1345 and 1349, as alleged in Count One and Counts Eighteen to Thirty-Three, all in violation of Title 18, United States Code, Section 1957.

Count thirty-five provided:

On or about April 13, 2007, in the District of Delaware and elsewhere, [movant] did knowingly engage in a monetary transaction by and through a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, that is the withdrawal by check of $15,366.00 from a Citizen's Bank account [], such property having been derived from a specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud, in violation of 18, United States Code, Sections 1345 and 1349, as alleged in Count One and Counts Eighteen to Thirty-Three, all in violation of Title 18, United States Code, Section 1957. (D.I 3 at ¶¶ 21, 22)

## E. Claim Five: Trial and Sentencing Counsel Failed to Object to Movant's Criminal History Calculation

In his final claim, movant contends that trial and sentencing counsel should have "noticed and objected to the erroneous application of his criminal history calculation where the government enhanced the [sentence] based on [a] prior sentence imposed more than fifteen years prior to [movant's] commencement of the instant offense." (D.I. 155 at 26) According to movant, the government incorrectly used his prior arrest on June 12, 1989 for conspiracy to distribute cocaine and related drug offenses to enhance his sentence in the instant matter, and erroneously calculated his sentence using criminal history category II instead of criminal history category I.

Movant's underlying argument regarding the allegedly erroneous application of criminal history category II lacks merit. Section 4A.1.1(a) of the sentencing guidelines advises courts to apply three points for "each prior sentence of imprisonment exceeding one year and one month." In turn, the application notes for § 4A1.1(a) assert, in relevant part:

Certain prior sentences are not counted or are counted only under certain conditions:

A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period.

See U.S.S.G. § 4A1.1(a); see also U.S.S.G. § 4A1.2(e).

Movant was sentenced on April 12, 1990 to a term of forty-eight months of imprisonment for a federal drug conviction, and he was released from custody on October 13, 1993.

20

In the instant case, movant was convicted by a jury for unlawful conduct that commenced in December 2006, which is thirteen years and two months after he was released for his previous drug offense. Since movant's prior incarceration ended in 1993, and his participation in the wire fraud and money laundering scheme commenced thirteen years later in 2006, his previous sentence imposed in 1990 should be counted. Thus, movant's sentence was properly calculated under criminal category II and three points were properly added to his offense level computation.

Based on the foregoing, the court will deny claim five as meritless.

## IV. PENDING MOTION

Movant filed a motion objecting to the government's motion for trial counsel's responses and documentation relating to movant's § 2255 motion. (D.I. 171) Although the court granted the government's motion, trial counsel never replied to movant's § 2255 allegations and never provided any documentation with respect to those allegations. Accordingly, the court will dismiss movant's objection as moot.

## V. EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; see also United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005); United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that movant is not entitled to relief because his arguments lack merit. Therefore, the court will deny movant's § 2255 motion without an evidentiary hearing.

21

## VI.  CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence without an evidentiary hearing.  Additionally, the court will not issue a certificate of appealability because movant's § 2255 motion fails to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable.  *See* 28 U.S.C. § 2253(c)(2)("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011).  An appropriate order will follow.